IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THORNHILL, INC.,
a West Virginia limited
liability corporation and
HIGHLAND PARK, LLC,
a West Virginia limited
liability corporation,

            Plaintiffs,

v.                                          Civil Action No. 3:05CV36
                                                              (STAMP)
NVR, INC. d/b/a Ryan Homes
and NVR, INC. d/b/a NVHomes,

            Defendants.


**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFFS' MOTION TO AMEND,
GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT ON ITS DECLARATORY JUDGMENT ACTION,
DENYING AS MOOT PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIM AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]**


I.  Procedural History

    Plaintiffs, Thornhill, LLC ("Thornhill") and Highland Farm,

LLC ("Highland Farm"), filed an action for declaratory judgment in

Circuit Court of Jefferson County, West Virginia, against

defendants, NVR, Inc. d/b/a Ryan Homes and NVR, Inc. d/b/a NVHomes.

Pursuant to West Virginia's Uniform Declaratory Judgments Act, the

plaintiffs sought a court declaration that three separate lot

_____

    [1]This Court set forth its tentative rulings on these motions
by a letter to counsel dated February 28, 2006, which letter is a
part of the record in this case.  This memorandum opinion and order
sets forth the Court's tentative rulings in more detail.

purchase agreements ("Original Lot Purchase Agreements") were (1) "delayed" as defined by the Original Lot Purchase Agreements, (2) justifiably and properly terminated by the plaintiffs, and (3) null and void.

The action was removed to the United States District Court for the Northern District of West Virginia on April 24, 2005. On April 28, 2005, the defendants filed an answer to the plaintiffs' complaint and filed a counterclaim seeking (1) a declaratory judgment that the Original Lot Purchase Agreements remained in effect, (2) an order for specific enforcement of each of the three lot purchase agreements, and (3) an injunction to prevent the plaintiffs from selling the lots to a third party.

On July 18, 2005, the plaintiffs filed a motion for summary judgment on their declaratory judgment claim and a "statement of undisputed material facts" to support their motion.[2] On August 1, 2005, the defendants filed a response to the plaintiffs' motion for summary judgment. No reply was filed.

On October 17, 2005, the defendants filed a motion for leave to amend their answer and counterclaim ("Amended Counterclaim"). The proposed Amended Counterclaim sought to introduce New Lot Purchase Agreements, and essentially requested (1) a declaratory

---

[2]The statement of undisputed material facts is a collection of the Original Lot Purchase Agreements, correspondences between parties, decisions by the Jefferson County Board of Zoning Appeals regarding a conditional use permit ("CUP"), subsequent state court decisions and appeals.

judgment that the New Lot Purchase Agreements replaced the Original Lot Purchase Agreements, were binding, had not been terminated and required the plaintiffs to perform, (2) in the alternative, a declaratory judgment that, if the New Lot Purchase Agreements were not valid, the Original Lot Purchase Agreements were binding, had not been terminated and required the plaintiffs to perform, and (3) injunctive relief restraining the plaintiffs from refusing to perform and from selling the subject property to a third party.

Also on October 17, 2005, the defendants filed a motion for summary judgment arguing that the New Lot Purchase Agreements supersede the Original Lot Purchase Agreements, and therefore, that the plaintiffs' declaratory action on the Original Lot Purchase Agreements must be dismissed. The plaintiffs filed a response in opposition to the defendants' motion on October 31, 2005.

Finally, on October 17, 2005, the plaintiffs filed a motion for summary judgment on the defendants' April 28, 2005 counterclaim ("Original Counterclaim"). At that point, the defendants' motion for leave to amend their counterclaim had not been granted. On October 31, 2005, the defendants filed a response.

On November 9, 2005, United States District Court Judge David A. Faber entered an order granting without objection the defendants' motion to amend their answer and counterclaim, and the defendants' Amended Counterclaim was filed. The plaintiffs filed an answer to the amended counterclaim on November 16, 2005.

On November 18, 2005, this Court held a motions hearing on the parties' motions for summary judgment. Following the motions hearing, the defendants filed a supplemental response to the plaintiffs' motion for summary judgment on the defendants' Original Counterclaim.

United States District Court Judge W. Craig Broadwater then entered an order transferring the case to the undersigned judge.

On January 5, 2006, the parties mediated their dispute before United States Magistrate Judge David J. Joel. The parties failed to settle the matter, but informed this Court that progress was made, and a status conference was scheduled for January 30, 2006. One day before that status conference, the plaintiffs filed two motions to amend their complaint. The defendants filed a response to both motions and on February 17, 2006 and the plaintiffs filed a reply.

## II. Facts

On September 26, 2001, Thornhill made an application to the Jefferson County Planning and Zoning Commission ("Zoning Commission") for a CUP with respect to a proposal to develop approximately 182 lots located in the Rural District of the Unincorporated Area of Jefferson County, West Virginia. (Pls.' Undisputed Facts, Ex. 10 at 4 and Ex. 11 at 7.) Following Thornhill's application, the Zoning Commission performed a Land Evaluation and Site Assessment ("LESA") for the development which

resulted in a satisfactory LESA, allowing the project to proceed to the Compatibility Assessment Meeting stage. Id. at 9; see Jefferson County Zoning Ordinance § 6.2 ("A score of 60 points or less advances the application to the Compatibility Assessment as provided in Section 7.2."). However, on November 27, 2001, several interested individuals appealed the LESA score with the Jefferson County Board of Zoning Appeals ("BZA").

On November 30, 2001, Thornhill executed two agreements for the sale and development of 90 lots with NVR, Inc. d/b/a Ryan Homes and 90 lots with NRV, Inc. d/b/a NVHomes. Following a hearing before the BZA, the Thornhill project was approved and the BZA issued a written opinion on February 21, 2002.

The BZA opinion was then appealed to the Circuit Court of Jefferson County, West Virginia, which held a show cause hearing on March 15, 2002. Following the hearing, the circuit court granted certiorari and granted Thornhill's motion to intervene.

Pending a ruling on the Thornhill project, Highland Farm executed an agreement on November 15, 2002 for the sale and development of 200 lots with NVR, Inc. d/b/a Ryan Homes. Herbert Jonkers, who managed Thornhill, also managed Highland Farm.

On April 15, 2003, the circuit court vacated the CUP issued for Thornhill, holding that the LESA was not supported by sufficient evidence. The matter was remanded to the Zoning Commission for further proceedings.

Another LESA was performed for the Thornhill project that gave the project a satisfactory score of 45.72. (Pls.' Undisputed Facts, Ex. 13; see Jefferson County Zoning Ordinance § 6.2.) The LESA score was again challenged by a petition filed on March 30, 2004. (Pls.' Undisputed Facts, Ex. 13.) The petition challenged the LESA score for public sewer availability. Upon the filing of the petition, Thornhill and Highland Farm moved to intervene and their motion was granted without objection. Accordingly, both Thornhill and Highland Farm were named as interveners in the BZA's decision on the March 30, 2004 petition.

Three letters dated May 6, 2004 were delivered on behalf of Thornhill and Highland Farm indicating that the plaintiffs wished to terminate the Original Lot Purchase Agreements pursuant to Paragraph 12(h). The defendants responded several days later indicating that "there is no basis to claim a default under the Contract and NVR is prepared to litigate this issue to the fullest if any effort is made to break the Contract and sell the property to another party." (Pls.' Undisputed Facts, Ex 7.)

On May 18, 2004, the Circuit Court of Jefferson County entered an amended order vacating its April 14, 2003 order in light of the West Virginia Supreme Court of Appeals decision Corliss v. Jefferson County Board of Zoning Appeals, 591 S.E.2d 93 (W. Va. 2003). Accordingly, the circuit court remanded the Thornhill

matter to the Jefferson County Planning Commission for the purpose of reinstating the CUP previously issued.

Notwithstanding the circuit court's amended order, the BZA held an initial hearing on the March 30, 2004 petition challenging sewer availability. The initial hearing, in which both Thornhill and Highland Farm participated as interveners, was continued until October 6, 2004.

The defendants allege that two more lot purchase agreements were executed in August of 2004. One agreement was between Thornhill, LLC and NVR, Inc. d/b/a NVHomes for 90 lots and purportedly replaced the earlier agreement between these parties. The second agreement was between Thornhill, LLC and NVR, Inc. d/b/a Ryan Homes for 90 lots and 200 lots and purportedly replaced the earlier agreement between these parties as well as the November 15, 2002 agreement with Highland Farm, LLC. Both agreements (collectively "New Lot Purchase Agreements") were signed by representatives of Thornhill, LLC in August 2004, but the signed copies were never physically returned to NVR, Inc. Around April 2005, Mr. Jonkers attempted to void the signatures by striking through them.

On October 6, 2004, the BZA issued a decision remanding Thornhill's application for a CUP to the Zoning Commission for further assessment of LESA points regarding the availability of

sewer service pursuant to § 6.4(g) of the Jefferson County Zoning
Ordinance.

A letter dated March 28, 2005 was delivered to the defendants
indicating that the plaintiffs again wished to terminate the
Original Lot Purchase Agreements under Paragraph 12(h).  In the
letter, the plaintiffs cite as "terminable events" the appeals to
the BZA.  The letter further asserts that a new waste water
treatment plant is required due to a lack of sewage capacity and
that the approval process could take up to a year.  The letter
indicates that a check for $350,000.00 was included with the letter
as a return of the earnest money posted for the three Original Lot
Purchase Agreements.  Finally, the letter maintains that the New
Lot Purchase Agreements were never executed and are not binding.

### III.  Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment
is appropriate if "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law."  The party seeking summary judgment bears the
initial burden of showing the absence of any genuine issues of
material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23
(1986).  "The burden then shifts to the nonmoving party to come
forward with facts sufficient to create a triable issue of fact."

Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

IV. <u>Discussion</u>

A. <u>Plaintiffs' Motions to Amend Complaint</u>

As a preliminary matter, this Court considers the plaintiffs' motions to amend their complaint filed on January 29, 2006 and January 30, 2006, respectively.[3] In general, the plaintiffs seek to amend their complaint to reflect arguments made by plaintiffs in response to the defendants' motion for summary judgment on their amended counterclaim. The proposed amended complaint also recites additional delays allegedly suffered since the original complaint was filed.

Federal Rule of Civil Procedure 15(a) applies to parties seeking to amend their pleadings in Federal Court. This Rule states in pertinent part:

---

[3]Plaintiffs filed a motion to amend their complaint and a motion to amend their motion to amend their complaint. For purposes of ruling on the plaintiffs' motions, this Court need not distinguish between the two motions.

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a).

Rule 15(a) grants the court broad discretion and a court should grant leave to amend absent an improper motive such as undue delay, bad faith or successive motions to remand that do not cure the alleged deficiency. See Ward Elec. Serv., Inc. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987). Where counsel for a party has been aware of a possible claim for a long period of time, but nevertheless refrains from moving to amend until the "last minute," a district court does not abuse its discretion by denying that party's motion to amend. Woodson v. Fulton, 614 F.2d 940, 943 (4th Cir. 1980).

The defendants argue that the plaintiffs have not shown good cause for their motion to amend and that the motion is dilatory. This Court agrees that the plaintiffs' motion to amend is unduly delayed and such delays are without good cause.

On July 22, 2005, Judge Broadwater entered a scheduling order stating that, "pursuant to the representations made by counsel at the scheduling conference, motions to join additional parties or motions to amend pleadings shall not be filed in this case." (Scheduling Order at 2.) Notwithstanding the scheduling order, the defendants filed a motion to amend their answer and counterclaim,

11

which was granted by Judge Faber.  It is somewhat important to note that the defendants' motion was made without objection from the plaintiffs.

However, the defendants' pleadings were amended on November 9, 2005, nearly three months prior to the plaintiffs' motion to amend. Indeed, the plaintiffs filed their motions to amend more than ten months after filing their original complaint.  Moreover, three motions for summary judgment have been filed and briefed, a motions hearing has been conducted, an amended scheduling order entered, mediation reports filed and a mediation conducted between the parties.  Despite ample opportunity to amend their complaint at each stage of these proceedings, the plaintiffs failed to make such a motion.  Instead, the plaintiffs filed their motions to amend the day before and the day of a status and scheduling conference at which the parties were to advise this Court of progress made following their mediation.

Under such circumstances, this Court finds that the plaintiffs have been dilatory in their request to amend their original complaint.  Moreover, this Court finds that the plaintiffs have not shown good cause for delaying their motion and that amending the motion so close to trial would unduly prejudice the defendants with additional delays.  Accordingly, this Court will deny the plaintiffs' motion to amend their complaint.

B.   Plaintiff's Motion for Summary Judgment on Complaint

Plaintiffs' July 18, 2005 motion for summary judgment argues that delays caused by proceedings before the BZA, the Circuit Court of Jefferson County and the Supreme Court of Appeals of West Virginia constitute a "delay" for over six months pursuant to the lot purchase agreements making the Original Lot Purchase Agreements terminable.   The plaintiffs argue that their three letters dated May 6, 2004 and the fourth letter dated March 28, 2003, which purports to have returned earnest money, constitute timely and proper terminations under the Original Lot Purchase Agreements.

Defendants respond that the proceedings before the BZA and the Circuit Court of Jefferson County described by the plaintiffs in their letters and in their motion do not constitute a "delay" as contemplated by the Original Lot Purchase Agreements.   Moreover, the defendants argue that, even if there was a delay, the lot purchase agreements were never sufficiently terminated.[4]

---

[4]As stated below, the defendants also argue that the Original Lot Purchase Agreements were sufficiently terminated by the New Lot Purchase Agreements, which themselves created new obligations between the plaintiffs and defendants with regard to the subject land.   Whether or not the New Lot Purchase Agreements terminate the Original Lot Purchase Agreements is a subject of the defendants' amended counterclaim and will be addressed below.   However, this Court finds it must first address whether the Original Lot Purchase Agreements were terminated by the plaintiffs as alleged in the claim for declaratory judgment notwithstanding the New Lot Purchase Agreements because an issue of material fact exists with regard to the New Lot Purchase Agreements.

Each of the Original Lot Purchase Agreements contains Paragraph 12(h), which states:

> Prior to, or at the time of, settlement on each Lot, building, plumbing connection, and other permits required for the erection of the residences on that Lot, and use and occupancy permits for finished residences on previously settled Lots, shall be available to Purchaser for immediate issuance or, in the case of use and occupancy permits, upon completion of the residences on such Lots, without governmental prohibitions or moratoria. If, due to a moratorium or moratoria regarding water, sewer, electrical, telephone or utility availability, Seller cannot provide fully developed and finished Lots in accordance with the escalation of the Purchase Price shall be suspended for an equal number of days. <u>The Seller and/or Purchaser may declare this Agreement null and void</u> if such moratorium <u>or any other delays</u> are in effect for <u>more than six (6) months</u> cumulatively, unless such <u>prohibition or moratorium</u> is due to Seller's failure to complete its development responsibilities, in which event only Purchaser shall have the option to declare this agreement null and void. In such event, the Seller and Purchaser shall be relieved from further liability hereunder, at law or in equity, and <u>any remaining Deposit balance will be refunded to Purchaser</u>.

(<u>See</u> Pls.' Statement of Material Facts at Exs. 1, 2 and 3 (emphasis added)).

In their response to the plaintiffs' motion, the defendants focus on the meaning of the word "moratorium." While this Court tends to agree with the defendants that the delays of the project underlying the three Original Lot Purchase Agreements do not amount to a moratorium as commonly understood, <u>see generally</u> <u>Black's Law Dictionary</u> 1026 (7th ed.), the phrase "or any other delays" creates terminable events that are in addition to a moratorium. If the parties wished to narrowly tie "any other delays" to "government

14

moratorium" as the defendants have suggested, then the parties could easily, for example, have substituted the word "such" for the word "other," which may have provided at least some grounds for limiting the phrase. In the alternative, the parties could have eliminated the entire phrase altogether or tied the delays to the performance or nonperformance of a particular event. However, there is nothing in the context of the phrase which narrows its scope. As drafted, the phrase is not limited, but broad.

With this broad phrase in mind, this Court turns now to the Jefferson County Zoning Ordinance which guides the CUP process. Pursuant to the Jefferson County Zoning Ordinance, it is "unlawful to commence construction of any commercial uses or uses which are not permitted uses in a zoning district without obtaining [CUP] approval." Jefferson County Zoning Ordinance § 6.1. Thus, both the Thornhill and Highland Farm projects required a CUP prior to development and delays in the process of obtaining a CUP that lasted six months constitute a terminable event pursuant to Paragraph 12(h).

The standards governing the issuance of a CUP consist of a successful LESA point application, BZA's resolution of unresolved issues and evidence offered by BZA that the proposed development is compatible with the neighborhood where it is proposed. Jefferson County Zoning Ordinance § 7.6(f). Appeals of CUPs issued by the BZA are guided by Article 8 of the Jefferson County Zoning

Ordinance. "When an appeal has been filed with the [BZA], all proceedings and work on the premises in question shall be stayed, unless the official or board from where the appeal was taken certifies in writing to the board of zoning appeals, that a stay would cause imminent peril to life or property." W. Va. Code § 8A-8-12.[5] Thus, it appears to this Court that, where a developer seeks a CUP and the process outlined by the Jefferson County Zoning Ordinance is stalled or stayed pursuant to an appeal, the result is a delay in the ability of the developer to develop the chosen piece of property as contemplated by Paragraph 12(h).

As stated above, the LESA score of the Thornhill project was challenged by appeal filed on March 30, 2004. (Pls.' Undisputed Facts, Ex. 13.) Upon appeal, the automatic stay of § 8A-8-12 went into effect. In addition, both Thornhill and Highland Farm intervened on behalf of the appellant, the Zoning Administrator. Viewing the facts in the light most favorable to the non-moving party, this Court finds that the March 30, 2004 appeal to the BZA constituted the beginning of a "delay" pursuant to Paragraph 12(h) that affected both the Thornhill and Highland Farm projects.

_____

[5]Section 8A-8-12 became effective after March 13, 2004. Prior to that date, § 8-24-58 controlled the automatic stay pending appeal to the BZA. There is no meaningful difference between the two provisions for the purposes of this case. It should also be noted that while Virginia law applies to the interpretation of at least some of the agreement as described below, West Virginia law guides the automatic stay as it applies to real property located within the State of West Virginia.

However, while this Court finds that the May 6, 2004 termination letters were possibly sufficient to terminate the Original Lot Purchase Agreements pertaining to Thornhill because the delays had lasted over six months, the letters could not have terminated the third Original Lot Purchase Agreement relating to Highland Farm because there could not been a six-month delay with regard to Highland Farm.

However, pursuant to the evidence submitted by both parties, all three developments continued to suffer delays. For example, on May 21, 2004, the BZA held a hearing on the appeal based in part on the LESA score for sewage capacity. As stated above, both Thornhill and Highland Farms were interveners on appeal. Rather than resolving the issue, and thus reinstating the CUP, the BZA continued the matter until June 17, 2004, further delaying development. On June 17, 2004, the BZA held a second hearing to review the LESA for purposes of a CUP. On October 6, 2004, the BZA entered an order remanding to the matter to the board for further supplementation of the record and further delaying the possibility of a CUP for either Thornhill or Highland Farm.

In sum, the delay of both projects amounted to more than six months as required under Paragraph 12(h). Moreover, the defendants have provided no evidence that none of the delays cited by the plaintiffs were due to "the Seller's failure to complete its development responsibilities . . . ," which would have limited the

ability of the plaintiffs to terminate the Original Lot Purchase Agreements. Thus, the letter dated March 28, 2005, which renewed the plaintiffs' intention to terminate the Original Lot Purchase Agreements and the return of earnest money via check, constituted a proper termination of all three of the Original Lot Purchase Agreements according to their terms.

This Court rejects the defendants' contention that there are no facts alleged concerning the plaintiff, Highland Farm, that could form the basis of relief. As stated above, Highland Farm is listed as an intervener in the October 6, 2004 BZA order remanding the matter to the board for supplementation of the record. The order indicates that both Thornhill and Highland Farm intervened when the appeal was filed. Both Thornhill and Highland Farm were managed by Mr. Jonkers and both developments were tied to the same problem of sewage capacity which ultimately lead the BZA to remand in its October 6, 2004 order. (See Pls.' Undisputed Facts, Ex. 14 at 15 and Ex. 17 at 1 and 2.) Even under the summary judgment standard requiring this Court to view facts in the light most favorable to the non-moving party, this Court believes evidence clearly establishes that the March 30, 2004 appeal and events following the October 6, 2004 BZA order constituted delays of both the Thornhill and Highland Farm developments.

In addition, this Court rejects the defendants' contention that the plaintiffs failed to return the earnest money deposit

within a reasonable amount of time. It is apparent that the plaintiffs included with their March 28, 2005 termination letter a check to serve as the return of the earnest money. (Pls.' Undisputed Facts, Ex. 8 at 2.) Moreover, Paragraph 12(h) does not give any specific instruction as to how the earnest money is to be returned in order for the termination to be valid. Accordingly, this Court liberally construes any obligation to timely return earnest money and finds the earnest money was returned at a time reasonable under the Original Lot Purchase Agreements.

As a final matter on this motion, this Court agrees with the defendants that the plaintiffs have been estopped from making the argument that the Original Lot Purchase Agreements failed to comply with the statute of frauds. Simply put, the plaintiffs rely on Paragraph 12(h) of the Original Lot Purchase Agreements to argue that they have been successfully terminated. Indeed, the plaintiffs pray in their complaint for a judgment declaring that Paragraph 12(h) was in full force, applied to the delays described above and allowed the plaintiffs to terminate. While this Court recognizes that in certain circumstances, a party may argue inconsistent theories, it holds that the plaintiffs may not file an action for declaratory judgment seeking to enforce Paragraph 12(h) in the Original Lot Purchase Agreements only to raise a statute of frauds type defense to argue that such agreements are unenforceable.

Even if the plaintiffs were not estopped, this Court finds that the Original Lot Purchase Agreements satisfy both West Virginia and Virginia's statute of frauds.[6] First, the statute of frauds goes toward the enforceability of a contract, not whether a contract has actually been formed. <u>Timberlake v. Heflin</u>, 379 S.E.2d 149, 153 (W. Va. 1989); <u>see generally</u>, <u>Burruss v. Hines</u>, 26 S.E. 875 (Va. 1897). Both Virginia and West Virginia's statutes of fraud relating to real property require that the real property be sufficiently described for a contract to be enforceable. <u>See Timberlake</u> at 153; <u>Reynolds v. Dixon</u>, 46 S.E.2d 6, 9 (Va. 1948). However, in both states, the description requirement is somewhat lenient.

In West Virginia, the Supreme Court of Appeals has held that "a memorandum which identified certain farm property as '[o]ne hundred (100) acres, more or less, located on the waters of Big Run,' was sufficient to withstand a motion to dismiss." <u>Jones v. Hudson</u>, 236 S.E.2d 38 (1977). In Virginia, "a memorandum is sufficient if it contains or makes reference to some other writing containing . . . a description of the property sufficient to render

_____

[6]Questions with respect to the construction of the first Thornhill Original Lot Purchase Agreement are to be construed under the laws of West Virginia. (Pls.' Undisputed Facts, Ex. 1 at 17, ¶ 15(f).) However, construction of the second Thornhill Original Lot Purchase Agreement and the Highland Farm Original Lot Purchase Agreement is guided by Virginia law. (Pls.' Undisputed Facts, Ex. 2 at 17, ¶ 15(f) and Ex. 3 at 17, ¶ 15(f).)

it capable of identification." <u>Reynolds</u> at 8,9. Moreover, as a general principle of contract law:

> Reasonable certainty of terms is all that is required, and whether the terms of the contract are sufficiently certain depends not only on the language of the contract but also on the surrounding circumstances and the overarching intent of the parties, since uncertainty apparent from a literal reading of the contract often disappears upon proper judicial interpretation and construction.

Richard A. Lord, 25 <u>Williston on Contracts</u> § 67:4 (4th ed. 2000).

This Court finds that each of the Original Lot Purchase Agreements satisfy the minium description requirements of both Virginia and West Virginia law. The contracts reference the acreage amount, the name of the farms and the county in which the property exists. In addition, the agreements refer to the Record Plat in which the property is more fully described. It also appears that in all proceedings before the BZA and the Circuit Court of Jefferson County as described by the plaintiff through their exhibits, the reviewing bodies and parties were able to adequately identify the particular property at issue.

Finally, this Court is somewhat persuaded by the defendants' argument based on the prevention doctrine. As stated by the Fourth Circuit, the prevention doctrine "is a generally recognized principle of contract law according to which if a promisor prevents or hinders fulfillment of a condition to his performance, the condition may be waived or excused." <u>Moore Brothers Co. v. Brown & Root, Inc.</u>, 207 F.3d 717, 725 (2000). Pursuant to Paragraph 1 of

each of the Original Lot Purchase Agreements, the plaintiffs were obligated to deliver upon execution of each agreement "true and complete copies of any and all subdivision plans, plats and deeds, surveys [and] specifications . . ." (Pls.' Undisputed Facts, Exs. 1, 2 and 3 at 1.) While Paragraph 1 creates more of an obligation than a condition, this Court find the prevention doctrine instructive in considering the plaintiffs' reliance on a purported lack of description in the contract when it was the plaintiffs' duty to provide a more detailed description in the form of plans, plats, deeds, surveys and specifications. This Court recognizes that the prevention doctrine is not an exception to the statute of frauds in either Virginia or West Virginia. However, this Court finds the prevention doctrine nevertheless prevents the plaintiffs in this case from raising the statute of frauds based on the lack of certain exhibits that they were obligated by contract to provide.

For the reasons stated, this Court finds the plaintiff's argument with regard to description of the property to be without merit.

C. <u>Plaintiffs' Motion For Summary Judgment on Defendants' Original Counterclaim</u>

In plaintiffs' motion for summary judgment on the defendants' April 28, 2005 counterclaim ("Original Counterclaim"), the plaintiffs argue that the original lot purchase agreements do not

have a legally sufficient description of the lots being purchased, and therefore, are legally unenforceable. In addition, the plaintiffs return to their previous argument that even if the descriptions of the lots were proper, the Original Lot Purchase Agreements were terminated. Thus, the plaintiffs argue that the stay implemented by appeals of the CUP to the BZA and to state courts constituted a "delay" as contemplated by the contract. The plaintiffs also argue that Jefferson County did not have sewage capacity to support the development of the lots at issue and that the plaintiffs' actions subsequent to letters purportedly terminating the lot purchase agreements did not make the termination invalid.

On October 31, 2005, the defendants filed a response to the plaintiffs' motion for summary judgment on the defendants' original counterclaim. Defendants first argue that the plaintiffs' motion for summary judgment on the Original Counterclaim was moot in light of the "new" lot purchase agreements. Defendants further argue that even if the original lot purchase agreements remain in effect, the plaintiffs' motion must be denied because (1) plaintiffs' contention that original agreements are unenforceable due to improper description is waived because it was not raised by the plaintiffs in their answer to the amended counterclaim, (2) plaintiffs are estopped because they rely on the contracts for relief, (3) plaintiffs waived their right to amend their answer by

not amending in a timely fashion, (4) property was sufficiently identified and described by the agreements, and (5) the prevention doctrine makes agreements enforceable notwithstanding definition and descriptions.

Ultimately, this Court finds that the plaintiffs' motion for summary judgment on the defendants' counterclaim must be denied as moot because the defendants' counterclaim has been superceded by the defendants' amended counterclaim, which primarily relies on the New Lot Purchase Agreements. The plaintiffs never filed a supplemental motion for summary judgment on the defendants' amended counterclaim. Because the plaintiffs' motion relates to a counterclaim that is no longer pending, the motion will be denied as moot.

D. Defendants' Motion for Summary Judgment on Amended Counterclaim

In defendants' October 17, 2005 motion to amend their answer and counterclaim, the defendants argue that they received "new" information through discovery that Herb Jonkers, manager of Thornhill LLC and Highland Farm LLC, signed two "new" lot purchase agreements in August of 2004 ("New Lot Purchase Agreements"). (Mot. Amend at 11.) In support of their motion to amend, the defendants argue that the old lot purchase agreements were superceded by the "new" lot purchase agreements.

In addition to filing a motion to amend, the defendants filed their own motion for summary judgment based upon the New Lot Purchase Agreements arguing that (1) the New Lot Purchase Agreements became effective when they were signed and (2) they were not voided by Mr. Jonkers' unilateral actions. Accordingly, the defendants argue in their summary judgment motion that the New Lot Purchase Agreements void the Original Lot Purchase Agreements and destroy the plaintiffs' claim for declaratory judgment, which is based solely on the Original Lot Purchase Agreements.

The plaintiffs respond that the New Lot Purchase Agreements are inoperable because (1) they were never properly executed, (2) even if they were executed, the signatures were voided by Mr. Jonkers, (3) Paragraph 12(h) of the New Lot Purchase Agreements again allows the plaintiffs to terminate for delaying that time period and (4) the description of the property is insufficient.

If, in fact, the New Lot Purchase Agreements are valid agreements, this Court agrees with the defendants that the new agreements, by their terms, terminate the Original Lot Purchase Agreements. However, this Court finds it must deny the defendants' motion for summary judgment because of at least one issue of material fact.

Specifically, there is an issue as to whether the New Lot Purchase Agreements have been signed by the appropriate persons. It should be noted that this Court rejects the plaintiffs'

contention that the agreements are ineffective because they were never delivered. Under West Virginia law, which guides both of the New Lot Purchase Agreements according to their terms, physical delivery of a memorandum of a contract for the sale of land is not required. See Ely v. Phillips, 109 S.E. 808 (W. Va. 1921). Moreover, neither contract requires delivery by its terms. In addition, this Court rejects the plaintiffs' assertion that the validity of the New Purchase Agreements was affected when Mr. Jonkers unilaterally and belatedly wrote the word void across the signatures. Finally, this Court finds its opinion above regarding the sufficiency of the description of property in the Original Lot Purchase Agreements also applies to the New Lot Purchase Agreements.

## V. Conclusion

For the reasons stated above, the plaintiffs' motion to amend is hereby DENIED, the plaintiffs' motion for summary judgment on its declaratory judgment action is hereby GRANTED, the plaintiffs' motion for summary judgment on defendants' counterclaim is hereby DENIED AS MOOT, and the defendants' motion for summary judgment is hereby DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     March 13, 2006


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE