IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THORNHILL, INC.,
a West Virginia limited
liability corporation and
HIGHLAND PARK, LLC,
a West Virginia limited
liability corporation,

    Plaintiffs,

v.                       Civil Action No. 3:05CV36
                                        (STAMP)
NVR, INC. d/b/a Ryan Homes
and NVR, INC. d/b/a NVHomes,

    Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' REQUEST FOR DECLARATORY JUDGMENT,**
**SPECIFIC PERFORMANCE AND INJUNCTIVE RELIEF**

I.   Background

This action involves several lot purchase agreements between plaintiffs, Thornhill, LLC ("Thornhill") and Highland Farm, LLC ("Highland Farm"), and defendants, NVR, Inc. d/b/a Ryan Homes and NVR, Inc. d/b/a NVHomes. Thornhill and Highland Farm initiated this action for declaratory judgment on three lot purchase agreements between the parties (termed "Original Lot Purchase Agreements"). On March 13, 2006, this Court entered a memorandum opinion and order granting the plaintiffs' motion for summary judgment with regard to the Original Lot Purchase Agreements after finding that the agreements had been successfully terminated under

their terms.[1] However, this Court's opinion did not dispose of the entire case.

Specifically, the defendants had filed an amended counterclaim seeking to enforce an additional set of lot purchase agreements (termed "New Lot Purchase Agreements").[2] In its March 13, 2006 opinion, this Court denied the defendants' motion for summary judgment with regard to the New Lot Purchase Agreements after finding that a factual dispute over the proper execution of the New Lot Purchase Agreements prevented summary judgment.

Following entry of this Court's opinion, the parties stipulated that the New Lot Purchase Agreements were properly executed and it was determined that the parties would brief their positions on the remaining issues in Count Two and Count Three of the defendants' counterclaim. Specifically, the parties were to address whether defendants were entitled to declaratory judgment on the New Lot Purchase Agreements, specific performance of those Agreements and injunctive relief. This Court further directed the parties to address whether any delay had occurred for purposes of termination under the terms of the New Lot Purchase Agreements.

---

[1]Facts and circumstances regarding the Original Lot Purchase Agreements are fully detailed in this Court's March 13, 2006 opinion and will not be repeated here.

[2]The New Lot Purchase Agreements consist of one August 26, 2004 lot purchase agreement between Thornhill and NVR, Inc. d/b/a NVHomes for the sale and development of 90 lots and one August 26, 2004 lot purchase agreement between Thornhill and NVR, Inc. d/b/a Ryan Homes for the sale and development of 90 lots and 200 lots

On April 5, 2006, the defendants filed a memorandum in support of declaratory judgment, specific performance and injunctive relief. The plaintiffs then filed a memorandum in opposition and the defendants filed a reply memorandum. This Court believes all pertinent issues have now been fully briefed and are ripe for review. For the reasons stated below, this Court finds that the defendants' request for declaratory judgment, specific performance and injunctive relief should be granted.

## II. Discussion

As a preliminary matter, the parties agree that the New Lot Purchase Agreements constitute properly executed and enforceable contracts.[3] At issue is whether this Court can find that these enforceable contracts were properly terminated by their terms, and if not, whether specific performance and injunctive relief are proper remedies for the defendants.

On the issue of whether the New Lot Purchase Agreements have been terminated, this Court rejects the defendants' contention that the plaintiffs failed to sufficiently raise termination as an affirmative defense. In paragraph 43 of the plaintiffs' answer and grounds of defense to amended counterclaim, the plaintiffs state that the Lot Purchase Agreements were sufficiently terminated. This Court finds that the statement adequately preserves

---

[3] In a letter addressed to this Court, the plaintiffs stipulated "that the New Lot Purchase Agreements were executed as required by their terms." (Def. Mot. Ex. 5.)

termination as a defense with regard to the New Lot Purchase Agreements.

Notwithstanding preservation of the defense, there is insufficient evidence on the record before this Court that termination has occurred. Decisive in this Court's decision is the period of discovery which was established through Judge W. Craig Broadwater's July 22, 2005 scheduling order and which period concluded on September 30, 2005. As the parties are well aware, discovery orders are not "frivolous pieces of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Forstman v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987). As one court has articulated their purpose, discovery orders promote "efficient case management for the court such that the court will not be faced with discovery issues in an untimely fashion." Campbell v. Gala Indus., Inc., No. 6:04-2036-RBH, slip op. at 1 (D.S.C., May 5, 2006).

While this Court recognizes the fluid nature of proceedings that have taken place concerning the property at issue in this action, September 30, 2005 passed without a request by either party to extend the discovery deadline in this action. The defendants did move and were granted leave to file an amended counterclaim on November 9, 2005, which introduced the New Lot Purchase Agreements to this action. The plaintiffs filed a response and, as stated above, raised the defense of termination. However, no effort was

4

made to reopen discovery and the plaintiffs waited until January 29, 2006, to file a motion to amend their complaint.[4] Accordingly, this Court retained the discovery deadline and determined that it would only consider documents disclosed during the period of discovery.

It should be noted that the decision to enforce the discovery deadline established by court order is more than a mere formality that can be solved by judicial notice as advocated by the plaintiffs. Paragraph 12(h) requires delay for consecutive months which are not due to any fault of the terminating party.[5] This

---

[4]This Court denied the plaintiffs' request as dilatory in its March 13, 2006 opinion. The proposed amended complaint included additional allegations of delay for purposes of termination under paragraph 12(h).

[5]Paragraph 12(h) provides, in pertinent part:

> Prior to, or at the time of, settlement on each Lot, building, plumbing connection, and other permits required for the erection of the residences on that Lot, and use and occupancy permits for finished residences on previously settled Lots, shall be available to Purchaser for immediate issuance or, in the case of use and occupancy permits, upon completion of the residences on such Lots, without governmental prohibitions or moratoria. If, due to a moratorium or moratoria regarding water, sewer, electrical, telephone or utility availability, Seller cannot provide fully developed and finished Lots in accordance with the escalation of the Purchase Price shall be suspended for an equal number of days. <u>The Seller and/or Purchaser may declare this Agreement null and void</u> if such moratorium <u>or any other delays</u> are in effect for <u>more than six (6) months</u> cumulatively, unless such <u>prohibition or moratorium</u> is due to Seller's failure to complete its development responsibilities, in which event only Purchaser shall have the option to declare this agreement null and void.

5

Court is not interested in perpetuating unnecessary litigation, but Paragraph 12(h) creates too many variables the evidence of which was not produced in discovery for review and consideration by all parties as well as this Court. The plaintiffs contend that this Court must take judicial notice of opinions revealed after the discovery deadline as well as their "importance." (Pls.' Resp. at 4.) "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). While the existence of the opinions cited by the plaintiffs may not be in dispute, their import certainly is in dispute, and questions regarding the consecutive nature of any delays and the cause of such delays remain beyond the scope of the discovery as established for this action.

For the reasons stated above, evidence of the plaintiffs' notice of termination of the New Lot Purchase Agreements is limited to a March 28, 2005 letter.[6] This letter purports to terminate the

---

> In such event, the Seller and Purchaser shall be relieved from further liability hereunder, at law or in equity, and <u>any remaining Deposit balance will be refunded to Purchaser</u>.

(Def.'s Mem. Ex 1 (emphasis added).)

[6]In accordance with the discovery deadline, this Court does not consider the letters dated January 28, 2006, March 6, 2006 or

Original Lot Purchase Agreements as stated in the subject heading of the letter. (See Pls.' Resp. Ex F.) This Court agrees with the defendants that the letters do not purport to terminate the New Lot Purchase Agreements. Paragraph 12(h) of each of the New Lot Purchase Agreements allows the seller or purchaser to declare the agreements "null and void" as a result of delays. Instead, this Court finds that the reference to the New Lot Purchase Agreements in the final paragraph of the letter contends that those agreements were never executed or returned to the defendants.[7] Accordingly, this Court does not believe the letters constitute proper termination of the New Lot Purchase Agreements.

Moreover, this Court agrees with the defendants that there is no evidence that the earnest money has been returned to the defendants. Paragraph 12(h) of each of the New Lot Purchase Agreements includes as part of termination the return of "any remaining Deposit balance." The plaintiffs argue that on March 6, 2006, a check for $350,000.00 was forwarded to the defendants with a supplemental notice of termination. In light of the discovery deadline in this case, the March 6, 2006 letter and returned check are not before this Court. Accordingly, this Court must find that

---

April 5, 2006.

[7]Of course, the plaintiffs have since stipulated that the New Lot Purchase Agreements were executed and this Court has found that delivery was not required to create a valid and binding contract.

7

no termination has occurred based on the record that is before this Court for purposes of this lawsuit.[8]

Next, this Court finds that specific performance is an appropriate remedy in this case. The plaintiffs argue that specific performance cannot be granted because the property at issue has not been subdivided and cannot be subdivided without violation of Jefferson County's land use regulations. Moreover, the plaintiffs argue that specific performance of the New Lot Purchase Agreements would be unjust, inequitable and unfair. This Court disagrees.

Specific performance "is not a matter of right in either party, but rests in the sound discretion of the court, to be determined from all the facts and circumstances of the case." Brand v. Lowther, 285 S.E.2d 474, 479 (W. Va. 1981). The party seeking specific performance must establish its right "by a clear preponderance of the evidence." Id. Specific performance will generally be granted where "the contract is in writing, is certain and fair in all its terms, is free of fraud, misapprehension or mistake, is for an adequate consideration, and is capable of being performed." Id. However, a court should ensure that "there is no hardship or oppression, even though these do not amount to legal or equitable wrong." Id. Finally, a court should not decree specific

---

[8]This Court makes no determination as to whether termination has occurred based on evidence not properly before it.

performance "where one of the parties cannot perform what is required of him without the consent of another who lawfully may and does withhold such consent." Id.

Because the parties have stipulated to the valid execution of the New Lot Purchase Agreements, this Court has found the agreements satisfy the elements of valid and binding contracts. All that remains before this Court grants specific performance is to ensure that the contracts are capable of being performed and that performance will not result in hardship or oppression.

First, this Court believes that the terms of the New Lot Purchase Agreements are capable of being performed. Contrary to the plaintiffs' suggestions, specific performance of the agreements would not direct the plaintiffs to violate any stay or regulation or related court order. Rather, the agreements specifically state that the seller's obligations are to be performed "in accordance with local government requirements." (Defs.' Mem. Ex. 1, 2 and 3 at ¶ 4.) Thus, compliance with the contract requires compliance with the law –- it could not be otherwise.

Second, this Court finds no hardship in specific performance of the valid agreements freely entered into by the plaintiffs. Indeed, the New Lot Purchase Agreements allow the plaintiffs to terminate the agreements pursuant to defined delays and notice. Nothing in this Court's order prevents the plaintiffs from terminating the New Lot Purchase Agreements under their terms or

9

asserting that the new agreements have already been properly terminated based on evidence not on record in this case. Accordingly, this Court finds specific performance to be an appropriate remedy.

As a final matter, this Court finds that injunctive relief is appropriate to the extent that it protects the defendants under the terms of the New Lot Purchase Agreements. In considering injunctive relief as a remedy for the defendants' counterclaim to enforce a contract for the sale of land, this Court is again guided by West Virginia law. See Fried v. North River Ins. Co., 710 F.2d 1022, 1024 (4th Cir. 1983).

Under West Virginia law, injunctive relief is appropriate where the right of the applicant is clear and where any other legal remedy would be less efficient than an injunction. Sams v. Goff, 540 S.E.2d 532, 534 (W. Va. 1999). Moreover, "[i]njunctive relief based on a contract must be coextensive with the terms of the contract." Standard Hydraulics, Inc. v. Kerns, 182 W. Va. 225, 387 S.E.2d 130 (W. Va. 1989).[9]

---

[9]West Virginia further holds that "[u]nless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its sound discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion." Sams, 540 S.E.2d at 534.

This Court finds that injunctive relief in this action is appropriate because the defendants' rights under the New Lot Purchase Agreements are clear as explained above. Moreover, this Court believes an injunction will uniquely protect the defendants' contractual right to the property at issue pending performance of the plaintiffs' obligations under the New Lot Purchase Agreements. Obviously, no injunctive relief imposed by this Court in this action will prevent a party from terminating the New Lot Purchase Agreements pursuant to their terms. See Standard Hydraulics, Inc. at 387. Nevertheless, the defendants are entitled to injunctive relief to prevent the plaintiffs from transferring the property at issue in this action to a third party in a manner inconsistent with the terms of the New Lot Purchase Agreements.

### III. Conclusion

For the reasons stated above, the defendants' request for declaratory judgment is GRANTED insofar as this Court holds that no termination has occurred based on the record that is before this Court for purposes of this lawsuit. In addition, this Court GRANTS the defendants' request for specific performance of the New Lot Purchase Agreements and GRANTS the defendants' request for injunctive relief insofar as it prevents the plaintiffs from transferring the property at issue in this action to a third party in a manner inconsistent with the terms of the New Lot Purchase Agreements.

It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: August 1, 2006

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE